**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MISAEL CORDERO,

          Petitioner,

v.

CHARLES E. WARREN, *et al.*,

          Respondents.

Civil Action No. 11-6114 (JLL)

**OPINION**

**LINARES**, Chief District Judge:

Presently before the Court are the plea-related ineffective assistance of counsel claims of Petitioner Misael Cordero's petition for a writ of habeas corpus, which were remanded to this Court by the Court of Appeals. *See Cordero v. Warren*, 673 F. App'x 254, 258 (3d Cir. 2016). Following a hearing in this matter, (*see* ECF No. 85), Petitioner filed a brief in support of his claims, (ECF No. 89), and the state filed a brief in opposition, (ECF No. 87). The parties also filed a joint stipulation of facts not in dispute. (ECF No. 88). For the following reasons, Petitioner's remaining claims are denied, and Petitioner is denied a certificate of appealability.

## I.     BACKGROUND

Because this Court has previously summarized the background of Petitioner's conviction and trial in the Court's previous opinion, (*see* ECF No. 35), this Court will only recount the fact evinced at the evidentiary hearing on Petitioner's sole remaining set of claims, *i.e.*, his claims in which he alleges that his trial counsel misadvised him as to several alleged plea agreements and that the resulting ineffective assistance of counsel led to his turning down those agreements when he otherwise would have pursued them. The parties are largely in agreement as to the background

facts of this matter other than whether a plea offer was ever made, and have stipulated to many of these facts. (*See* ECF No. 88).

Petitioner, Misael Cordero, was sentenced in September 1993 to ten years imprisonment for possession with intent to distribute a controlled substance in a school zone. (ECF No. 88 at ¶ 2). Petitioner was thereafter convicted in June 1994 of further drug distribution related offenses which resulted in his receipt of a forty-year extended-term sentence. (*Id.* at ¶ 3). Over six years later, following the coming forward of certain witnesses, Petitioner was indicted on three sets of homicide charges in three separate indictments. (*Id.* at ¶¶ 4-5). Petitioner was also indicted on several underlying robbery and weapons charges related to one of those homicides. (*Id.* at ¶ 4). Petitioner was tried and convicted of all charges of the relevant indictment in this matter, including the homicide charges, robbery charges, and weapons offenses. (*Id.* at ¶ 6). Petitioner received a life sentence on the homicide counts, to run concurrent with his prior convictions, with a thirty-year parole disqualifier. (*Id.*). Petitioner's non-homicide charges, however, were dismissed at sentencing as the trial court found them barred by the relevant statute of limitations. (*Id.*). The parties agree that, because the murders were committed before the drug charges resulting in Petitioner's 1994 conviction, Petitioner was entitled at sentencing to 3,247 days of gap time credit, which would have reduced Petitioner's overall sentence had he not received a life sentence, but would not have reduced any period of parole ineligibility. (*Id.* at ¶¶ 17-19). Because Petitioner received a life sentence, however, that gap time was of no benefit to Petitioner following his conviction at trial. (*Id.*).

Petitioner was initially represented by William Fitzsimmons, who was then a member of the Public Defender's Office, while this matter was prosecuted by now retired prosecutor Edward

Gordon. (*Id.* at ¶¶ 7-8). Mr. Gordon was assigned, however, to all three of Petitioner's homicide indictments, and tried the two that went to trial. (*Id.* at ¶ 7). In August 2001, Mr. Fitzsimmons left the Public Defender's Office, and Petitioner's case was reassigned to John McMahon, who was then the chief trial attorney for the Essex Region of the Public Defender's Office. (*Id.* at ¶ 9-10). Mr. McMahon represented Petitioner through his trial and sentencing. (*Id.*).

All three attorneys who testified at Petitioner's evidentiary hearing generally agreed as to the way the Essex County Prosecutor's Office handled plea negotiations and offers at the time Petitioner was tried. As Mr. Gordon explained,

> Sometimes, not in every case[, s]ometimes depending on the defense attorney, [the defense attorney] would suggest something, and if [the prosecutor] thought it was something that [the prosecutor's] supervisors could live with and the prosecutor . . . would go speak to the supervisor, the chief prosecutor, and then [the prosecutor] would complete a recommendation . . . for [a] plea . . . disposition. And [the prosecutor] would have that signed . . . [by his] supervisor[.] Even if [the prosecutor was] a director [he would have] had a supervisor, and it would go to the deputy chief. [I]n homicide cases, . . . the [district attorney] may have signed off on most of all of those, and then [the prosecutor] would present it . . . to the defense attorney, and he and his client . . . would discuss it, and if the plea was accepted, [the parties] would execute the plea.

(*Id.* at ¶ 11). Any plea to be proposed by the prosecutor would apparently also have to be discussed with the victim's family before it would be approved by the prosecutor's office. (*Id.* at ¶ 12). The Petitioner's trial counsel agreed that, as the state was not "looking to negotiate itself" and would not "want to waste time" seeking necessary approvals unless he knew a deal would be accepted, the state would generally not make written plea offers but instead would wait for an offer from the defense before seeking approvals and reducing the offer to writing. (*Id.* at ¶¶ 12–13). The State would apparently occasionally ask the defense whether the petitioner was interested in

3

a plea to begin discussions, but generally offers began with the defense attorney proposing an agreement to the state. (*Id.* at ¶¶ 11–13). No agreement "would ever be written up until [the parties] actually came to an agreement, and then [the prosecutor] would write it up, and then . . . go through their chain of command" for the necessary approvals. (*Id.* at ¶ 13). The parties agree that, in this matter, neither the prosecutor's nor public defender's offices contain "any files relevant to plea negotiations or discussions other than" a letter from the state rejecting a proposed plea which would exculpate one of Petitioner's co-defendants and the actual plea agreements of two of Petitioner's co-defendants. (*Id.* at ¶ 24). There is thus no documentary evidence of any plea offer or agreement in the record of this matter.

At the hearing in this matter, Petitioner first called his initial trial counsel, William Fitzsimmons, to testify. As relevant to these habeas proceedings, Mr. Fitzsimmons testified that he was initially appointed to represent Petitioner by the spring of 2001 and represented Petitioner until he departed the public defender's office in August 2001. (ECF No. 85 at 34:23–35:95). Mr. Fitzsimmons was then aware that Petitioner was in prison, although he did not think he would have necessarily had Petitioner's judgment of conviction for his prior offenses on file. (*Id.* at 36:11–19). Mr. Fitzsimmons admitted that he failed to recognize the statute of limitations issue or discuss it with Petitioner while he represented him, and likewise admitted that he never discussed the gap time issue with Petitioner. (*Id.* at 38:23–40:8). Although Mr. Fitzsimmons remembered his dealings with Petitioner, he could not recall "ever having significant plea discussions with" Petitioner, and did not "remember being involved in . . . plea negotiations" in Petitioner's case. (*Id.* at 40:16–18, 43:18–21, 52:9–11). Mr. Fitzsimmons also did not recall ever receiving a plea offer from the state, although he suggested his file, which could not be located at the time of the

hearing, would have had notifications had there been any plea discussions. (*Id.* at 40:19–41:14). Mr. Fitzsimmons further testified on cross examination that "there would be no reason to" discuss gap time with Petitioner unless a plea offer had been made, suggesting that the issue may not have been discussed because no agreement had been offered. (*Id.* at 47:2–6). Mr. Fitzsimmons clarified, however, that he had no recollection of any plea offer being made, but that did not foreclose the possibility that one had been extended that he had forgotten. (*Id.* at 56:3–13).

Petitioner next called John McMahon, who represented Petitioner after Mr. Fitzsimmons left the public defender's office and throughout his trial and sentencing. (*Id.* at 58:13). Mr. McMahon admitted, as had Mr. Fitzsimmons, that he failed to recognize the gap time and statute of limitations issues prior to trial, and that he thus failed to advise Petitioner as to those issues during the time when plea negotiations could have taken place. (*See id.* at 58-92). As to a plea, Mr. McMahon testified that he didn't "have any recollection at all of discussing pleas." (*Id.* at 95:16–18). When presented with the letter in which the state refused to discuss any plea deal in which Petitioner exculpated one of his co-defendants, Mr. McMahon recalled Petitioner's desire to exculpate the co-defendant, and admitted that the letter "reflected that there were some [plea] negotiations," but he still could not recall any plea offer being made. (*Id.* at 95:4–98:16). Mr. McMahon acknowledged that the matter may have been more easily resolved via a plea had he advised Petitioner of the gap time or statute of limitations issues, but he could remember no plea offers which could have led to such a resolution. (*Id.* at 98:16–22). Mr. McMahon also acknowledged that he could not remember the extent of plea discussions or how long they extended through the pre-trial process. (*See id.* at 100).

Petitioner also testified at the hearing. Petitioner testified that his attorneys never

informed him of the gap time or statute of limitations issues, and that had they done so he would have been inclined to plead guilty. (*Id.* at 109:23–11:22). Petitioner testified that he had received multiple plea offers from the state. (*Id.* at 112:10, 114:19–20, 117:21–22, 119:20–22). In the first alleged deal, Petitioner stated that Mr. McMahon told him that the state had asked if he would be "willing to take a 15-year plea consecutive" to his prior drug crime sentences. (*Id.*). Petitioner stated that he refused this deal because he was likely to serve the maximum time on his drug sentences, and would not be able to spend an additional fifteen years in prison. (*Id.*). Petitioner further testified that had he been told that gap time would have reduced the fifteen years to approximately half that amount of time, he would have been willing to take such a plea. (*Id.* at 113:18–14:18). Petitioner also testified that he thereafter received a second plea offer which would have required him to plead guilty to all three homicide indictments and receive a ten-year sentence on each homicide, totaling thirty years, which would run concurrent to his drug sentences. (*Id.* at 114:19–15:5). Petitioner testified, however, that this deal would also have required him to plead guilty to the time barred weapons charges, which he was unwilling to do as he believed himself innocent of those charges. (*Id.* at 115:7–17:8). Petitioner then testified that a third plea was offered, but would have required him to testify against his co-defendant, which he was also unwilling to do. (*Id.* at 117:21–19:21). Petitioner also stated that Mr. McMahon had requested a plea offer where murder charges against his co-defendant and weapon charges against himself would be dropped, which apparently failed to gain prosecutorial approval. (*Id.* at 119:1–13). Petitioner then stated that the state reoffered the first two plea deals again, and he again refused for the same reasons as he had done previously – he was unwilling to plead to weapons offenses and was not willing to take a consecutive fifteen-year sentence. (*Id.* at 119:23–20:2). Petitioner

did eventually take five-year plea on one of his two other homicide indictments after he was convicted of all charges at trial. (*Id.* at 120:3–5). Petitioner testified that the last of the three indictments was tried, and Petitioner "won" that case and was acquitted of those charges. (*Id.* at 121:6–10). Although Petitioner stated that the thirty-year concurrent plea would have required that he plead guilty to some of the weapons charges, Petitioner provided no further details as to which charges he would have had to plead guilty to in order to take these alleged pleas. (*See generally id.* at 111–22). Petitioner further testified that he brought these issues to his post-conviction relief ("PCR") counsel's attention, but his PCR counsel refused to raise them. (*Id.* at 124:2–25:25). Petitioner also testified at length as to his belief that PCR counsel failed to adequately represent him or raise his claims. (*See generally id.* at 124–38).

The final witness at the evidentiary hearing in this matter was Edward Gordon, the retired prosecutor who represented the state in Petitioner's criminal matter. (*Id.* at 160:17). After describing the prosecutor's office's plea procedure as outlined above, Mr. Gordon testified that he did not recall ever making a plea offer to Petitioner, nor any real discussion of a plea with Petitioner's trial attorney. (*Id.* at 162:1–63:9). Mr. Gordon admitted that there had been "some conversation" regarding Petitioner's potential interest in a plea in which he exculpated a co-defendant, that Mr. Gordon had rejected, but stated that he could remember no serious discussion of a plea that Mr. Gordon considered actual negotiation. (*Id.* at 165:5–6). Mr. Gordon then stated that his goal in prosecuting Petitioner was ensuring that "the net result" was Petitioner's further "incarceration for the homicide" charges. (*Id.* at 164:8–15). He clarified that he "wouldn't have" considered any plea which was to run concurrent with the drug conviction sentence Petitioner was already serving. (*Id.* at 165:17–20).

On cross examination, Mr. Gordon reiterated that he had "no recollection of ever offering any plea." (*Id.* at 167:25). When Petitioner's habeas counsel suggested this meant Mr. Gordon couldn't remember one way or the other whether a plea was offered, Mr. Gordon refuted that assertion, and again asserted that he remembered no plea offer being given, and thus to the extent he could recall there was no plea offer. (*Id.* at 168:1–12). When asked whether the fact that Petitioner's was a cold case would have suggested that he should offer a plea, Mr. Gordon refuted that assertion, stating that he was "comfortable with [his] proofs." (*Id.* at 174:19–23). Mr. Gordon explained that he had no interest in a plea deal because he already had witnesses who had already been given guilty pleas including "the shooter, the actual shooter [who] told detectives . . . about this incident," and "the guy who dug the hole across the street, who was told that he was digging a hole for a bond." (*Id.* at 174:19–75:10).

## II. DISCUSSION

### A. Legal Standard

As this Court has previously determined, (ECF No. 72 at ¶ 6), Petitioner's current claims are procedurally defaulted because they were not raised in the state courts. *See Cordero*, 673 F. App'x at 257. He would therefore only be able to obtain relief in this Court based on those claims if he can establish that his claims meet one of the exceptions which would permit this Court to hear such a claim. *Id.* In this case, Petitioner argues that his claims should not be barred by his procedural default because those claims were not raised due to ineffective assistance of post-conviction relief counsel. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). Under the *Martinez* standard, a petitioner establishes cause and actual prejudice sufficient to overcome his procedural default where he can show that "his underlying ineffective-

assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness." *Workman v. Superintendent Albion SCI*, 908 F.3d 896, 906 (3d Cir. 2018). A petitioner will generally meet this standard where he shows that he had a potentially meritorious ineffective assistance of counsel claim which his post-conviction relief attorney ignored or failed to recognize while pursuing weaker claims. *Id.* Where a petitioner shows sufficient cause and prejudice to overcome his procedural default in the state courts, a court sitting in habeas review will decide his claim "de novo because the state court did not consider the claim on the merits." *Id.* at 908 (quoting *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017)). Because Petitioner's current claims, if proven, would be "substantial" claims of ineffective assistance of trial counsel, and as the parties have presented little evidence to suggest that Petitioner's PCR counsel provided objectively reasonable performance, this Court assumes for the sake of this opinion that Petitioner's claims meet the requirements of *Martinez* and addresses Petitioner's plea-related claims de novo. *Id.*

**B. Credibility Findings**

Having held an evidentiary hearing in this matter and having had the opportunity to observe the demeanor and testimony of the witnesses at that hearing, this Court makes the following credibility determinations. This Court finds the testimony of Petitioner's trial attorneys, John McMahon and William Fitzsimmons generally credible. Both attorneys candidly admitted their failure to recognize and discuss with Petitioner certain issues—specifically gap time and the statute of limitations for Petitioner's non-homicide charges—prior to trial. Both attorneys also were forthcoming in their admission that while they would have expected that plea negotiations would have occurred in this case, neither attorney could recall any specific plea deal being offered and

thus could not say one way or another that a plea offer was or was not made. This Court thus finds both attorneys' testimony credible.

This Court also finds highly credible the testimony of retired prosecutor Edward Gordon. Mr. Gordon was forthright and responsive to questioning and admitted that he did not have a complete recollection of Petitioner's prosecution after the passage of many years. This Court specifically credits Mr. Gordon's testimony that: (1) he did not recall ever offering a plea deal to Petitioner; (2) he was comfortable with the proofs against Petitioner and thus had little impetus to offer a plea deal; and (3) he admitted that some discussion of a plea deal may have occurred, but that he could never recall reaching a point where an actual plea offer was contemplated or made. This Court thus finds Mr. Gordon's testimony highly credible, and to the extent that it conflicts with Petitioner's testimony, credits Mr. Gordon's testimony over that of Petitioner.

Turning to Petitioner, this Court found Petitioner's testimony as to his lawyer's failure to advise him as to gap time and the statute of limitations issues credible as that testimony is well supported by both his former attorney's testimony and the record. This Court found Petitioner's testimony as to plea negotiations, however, less credible than that of Mr. Gordon or Petitioner's former attorneys, none of whom could recall any of the proposed pleas Petitioner claims were offered. This Court specifically found Petitioner to lack credibility in his testimony regarding the alleged plea deals. Although Petitioner was largely responsive to questioning, his demeanor on cross-examination as to the alleged deals was considerably more combative and less forthcoming than his testimony as to the importance of the gap time or statute of limitations issues on direct examination. That Petitioner did not assert his statute of limitations related plea claim until after the remand by the Third Circuit further raised questions about whether any deal involving the time

barred weapons charges was ever offered, and this Court specifically finds that Petitioner's testimony on that issue at the hearing lacked sufficient credibility to establish that any such plea offer was ever extended by the State. Ultimately, given his demeanor and responses to the questions posed, this Court finds Petitioner the least credible of the witnesses presented and discounts his testimony accordingly to the extent it conflicts with that of the other three witnesses.

C. **Petitioner's Ineffective Assistance of Plea Counsel Claims**

In his current claims, Petitioner alleges that his trial attorneys proved ineffective in advising him in regards to several alleged plea agreements by either failing to inform him that he may have been entitled to nearly nine years of gap time credit or by failing to advise him that certain non-homicide charges on which he had been indicted were time barred, and that he therefore turned down plea agreements to which he otherwise would have agreed. "The [Supreme] Court has []emphasized that '[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process.'" *United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)). This right requires counsel to provide a defendant with "enough information to make a reasonably informed decision whether to accept a plea offer," which generally requires a discussion of comparative sentencing exposure. *Id.* (internal quotations and citations omitted). Although a criminal defendant is entitled to adequate advice of counsel as to any offered plea, defendants "have no right to be offered a plea," nor a federally guaranteed right to a judge accepting any plea deal. *Lafler*, 566 U.S. at 168 (quoting *Missouri v. Frye*, 566 U.S. 134, 148 (2012)).

Where a petitioner can show that counsel failed to adequately advise him as to a proposed plea agreement, he will still not be entitled to relief unless he can show that he was prejudiced by

that failing. This requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice." *Id.* at 163. A petitioner will therefore succeed in establishing prejudice where he shows that a plea agreement was offered, that he would have accepted the proposed plea agreement absent counsel's deficient advice, that the deal in question would not have been withdrawn by the Government, and that the sentence received pursuant to the offered plea would have been less severe than the result of his trial. *Id.* at 164.

Because Petitioner's trial attorneys admitted that they failed to discuss the gap time and statute of limitations issues with Petitioner prior to trial, because Petitioner's trial attorneys also acknowledged that they should have recognized those issues during the plea negotiation stage and discussed them with Petitioner, and because Petitioner has alleged that he would have accepted the alleged pleas had these issues been discussed, the testimony at the hearing held in this matter is more than sufficient to establish that Petitioner's trial attorneys provided him with deficient performance, provided that Petitioner can establish that there was a plea agreement for them to discuss with him. As both of Petitioner's attorneys testified, Petitioner was clearly entitled to a significant quantity of gap time which could have reduced any over-all sentence of less than life imprisonment, information which surely would have been vital to any decision to accept or reject an offered plea deal. Likewise, that some of the charged counts—including the weapons charges of which Petitioner contends he was innocent—surely was information that would have been important to Petitioner in choosing whether to accept a plea deal had one been offered. Thus, if Petitioner could establish the existence of an offered plea deal, the testimony at the hearing held

in this matter would clearly establish deficient performance.

Because Petitioner's uncontested testimony at the hearing suggests that Petitioner would have taken any of the deals he alleges he was offered had he been properly advised as to the gap time and statute of limitations issues, Petitioner's entitlement to relief relies entirely on his ability to establish that there was in fact an offered plea agreement, rather than mere discussions. *See Lafler*, 566 U.S. at 163–64. The record of this matter contains no documentary evidence of an offered plea agreement; instead, the only documentary evidence related to plea discussions between the prosecutor and Petitioner is a letter from the prosecutor which specifically rejects a plea proposal made by Petitioner's counsel prior to trial. (*See* Joint Stipulated Findings of Fact, ECF No. 88 at ¶ 24; *see also* ECF No. 59-8). Instead, the record contains only one source of information which suggests that any actual plea offer, as opposed to mere negotiations, was ever extended—Petitioner's own testimony. Neither of Petitioner's trial attorneys could recall a plea offer being extended by the prosecutor's office, and the assigned prosecutor credibly testified that he could recall no "serious discussion concerning a plea," that he had "no recollection of making a plea offer," and was not inclined to seek a plea as he was "comfortable with [his] proofs" in light of the multiple witnesses against Petitioner whose testimony had already been secured, including "the actual shooter." (ECF No. 85 at 168, 172, 174–75).

Although this Court does not doubt that Petitioner and his counsel may have discussed the potential for a plea agreement, and may even have discussed their wish to seek deals which could have included terms such as a fifteen year sentence or three ten year terms to run concurrent with his prior sentence, this Court finds Petitioner's assertion that any such plea deal was ever offered by the State lacking in credibility. Petitioner has failed to present sufficient credible evidence in

support of his assertion that a plea deal was offered by the state, and this Court finds that what evidence has been presented—including the letter in the record and the testimony of the three attorneys at the hearing in this matter—supports a contrary conclusion. Based on the evidence in the record, and this Court's credibility determinations as outlined above, Petitioner has failed to show that an actual plea offer was ever extended to him by the state. Petitioner has therefore failed to meet his burden of showing that there was a plea deal which was offered by the state, and thus cannot show that there was an available deal he would have taken had his trial counsel more adequately advised him to the gap time and statute of limitations issues. Petitioner thus cannot establish *Strickland* prejudice, and his plea-related ineffective assistance of counsel claims must fail in light of this Court's credibility findings. *See Lafler*, 566 U.S. at 163–64. Petitioner is therefore not entitled to habeas relief as to his remaining ineffective assistance of plea counsel claims.

In so concluding, this Court does not wish to diminish the failures of trial counsel in this matter. Their failure to advise Petitioner as to two important issues—Petitioner's entitlement to gap time credit and the fact that the non-homicide charges Petitioner faced were time barred—is considerable, and this opinion should not be read to excuse or condone those failings. Counsel's deficient performance alone, however, is not sufficient to warrant habeas relief, only with a showing of prejudice could Petitioner prevail, and it is there that his claims stumble. Ultimately, Petitioner's claims fail solely because the evidence presented viewed in light of this Court's credibility findings did not convince this Court that any plea offer was actually extended to Petitioner, and as Petitioner has no right to be offered a plea deal, he cannot show the required *Strickland* prejudice. *See Lafler*, 566 U.S. at 168 (stating that where "no plea offer is made" the

"issue [of ineffective assistance of counsel in advising a petitioner as to a plea] simply does not arise"). Indeed, any non-plea related prejudice as to the gap time issue was essentially erased by Petitioner's life sentence—as the parties agree gap time cannot reduce a life sentence—and any non-plea related prejudice as to the statute of limitations issues was essentially diffused when the time barred charges were dismissed at Petitioner's sentencing. As stated above, Petitioner has failed to show that there was a plea offer extended to him, and the evidence presented instead leads this Court to conclude that no such offer was extended. Petitioner therefore cannot establish that he was prejudiced by the failings of counsel in this matter, and it is for that reason that his claims must fail.

### III. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In light of this Court's credibility determinations and the lack of credible evidence of a plea offer having been made in this case, Petitioner's ineffective assistance of plea counsel claims are without merit and Petitioner has therefore failed to make a substantial showing of the denial of a constitutional right. Petitioner is therefore denied a certificate of appealability.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's remaining ineffective assistance of plea

counsel claims are denied, and Petitioner is denied a certificate of appealability. An appropriate Order follows this Opinion.

Dated: February 21st, 2019.

JOSE L. LINARES
Chief Judge, United States District Court